NO. 07-10-00377-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 8, 2012

_____

IN THE INTEREST OF T.B., A CHILD

_____

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2009-550,128; HONORABLE JUDY C. PARKER, JUDGE

_____

Before CAMPBELL and PIRTLE, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

The Attorney General of Texas appeals from the trial court's order sustaining a contest to a notice of registration of an Alabama paternity and child support judgment against a Texas resident. Through one issue, the Attorney General argues the trial court's refusal to register the Alabama judgment was an abuse of discretion. We will reverse the trial court's order and remand the case.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Background

In 2002, the State of Alabama ("the State") filed a paternity and child support action against Matthew P. Quackenbush in a court of Madison County, Alabama. The suit concerned a child, T.B., born in Alabama in May 2000. Quackenbush, a Texas resident, retained counsel and asserted the Alabama court lacked personal jurisdiction over him.

The court eventually ruled against Quackenbush, and signed a final order setting child support that determined Quackenbush to be the father of T.B. and set current and retroactive support. Quackenbush did not appeal this order.

In December 2009, the Attorney General filed a notice of registration in Lubbock County, giving Quackenbush notice that the Attorney General had registered the final Alabama order for enforcement, under the Uniform Interstate Family Support Act ("UIFSA").[2] Quackenbush contested the validity and enforcement of the order, again asserting the Alabama court lacked personal jurisdiction over him. At a hearing conducted in Lubbock County, Quackenbush acknowledged his sexual relationship with T.B.'s mother, but said all their acts of intercourse occurred across the state line in Georgia. The court held the Alabama order was not eligible for registration, and dismissed the Attorney General's notice.

Applicable Law

We will review the trial court's ruling for an abuse of discretion. *Office of the Atty. Gen. v. Buhrle,* 210 S.W.3d 714, 717 (Tex.App.—Corpus Christi 2006, pet. denied),

---

[2] Tex. Fam. Code Ann. §§ 159.001-.901 (West 2003).

*citing Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990). A trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Among the defenses to registration of a foreign support order under UIFSA is the defense that the foreign court lacked personal jurisdiction over the contesting party. Tex. Fam. Code Ann. § 159.607(a) (West 2008); *In the Interest of G.L.A.,* 195 S.W.3d 787, 792-93 (Tex.App.—Beaumont 2005, pet. denied). One of the bases for personal jurisdiction over a nonresident under UIFSA is that the nonresident "engaged in sexual intercourse in [the state] and the child may have been conceived by that act of intercourse." Tex. Fam. Code Ann. § 159.201(a)(6) (West 2010); Ala. Code § 30-3A-201 (West 1975).

The Full Faith & Credit Clause of the United States Constitution applies to judgments under UIFSA. U.S. Const. art. IV, § 1; *In the Interest of G.L.A.,* 195 S.W.3d at 792-93; *Villanueva v. Office of the Atty. Gen.,* 935 S.W.2d 953, 954-55 (Tex.App.-San Antonio 1996, writ denied). *See also* Full Faith and Credit for Child Support Orders Act, 28 U.S.C.A. § 1738B (West 2005) (also requiring states to enforce child support orders from another state).

## Analysis

In *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), the United States Supreme Court laid down "the general rule that a judgment is entitled to full faith and credit – even as to questions of jurisdiction – when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in

the court which rendered the original judgment." *Id.* at 111; *accord*, *Sherrer v. Sherrer,* 334 U.S. 343, 352, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948) (prohibiting relitigation of jurisdictional determination made in foreign divorce litigation). The Attorney General argues on appeal that the Alabama court's determination it had personal jurisdiction over Quackenbush is entitled to full faith and credit. We agree.

Quackenbush appears to argue that requirements of full faith and credit must give way to the statutory defenses listed in UIFSA. The cases he cites in connection with this argument, however, merely prove the general rule. Quackenbush asserts that *South Carolina Dep't of Soc. Servs. v. Bess,* 327 S.C. 523, 526-27 (S.C.Ct.App. 1997), "fundamentally rejected the argument that the Full Faith and Credit Clause precluded the statutory defenses listed in UIFSA." But it is clear from the opinion in that case that the issue Bess raised, lack of personal jurisdiction over him in Florida, was not fully and fairly litigated in the Florida court that issued the judgment sought to be registered in South Carolina. The issue was not litigated at all in Florida. Bess's contention was that he was never served in the Florida action, and the opinion contains no mention he participated in the Florida action to any degree. *Id.* at 525.

Quackenbush also cites *In the Interest of T.J.,* in which a Texas-resident father opposed registration in Texas of a 2001 Michigan child support arrearage order. *In the Interest of T.J.,* No. 12-03-00331-CV, 2005 Tex.App. LEXIS 1927 (Tex.App.—Tyler, March 14, 2005, no pet.) (mem. op.). In the registration proceeding in Texas, the father asserted he was not served with notice of the suit leading to the arrearage order and the Michigan court thus lacked personal jurisdiction over him. The trial court accepted the argument and denied registration for that reason among others. *Id.* at *8-*9. Reversing,

4

the appellate court found on that issue that the record of the Texas registration proceeding contained no evidence the father was not served. *Id.* at *10. The treatment of the personal jurisdiction issue by the Texas court is consistent with the general rule stated in *Durfee*, however, because the issue of the Michigan court's personal jurisdiction over the father was not litigated in Michigan. There was no determination of that issue in Michigan to which the Texas court could give full faith and credit.

This court drew the same distinction outside the child support context in *Roark v. Sweigart*, 848 S.W.2d 387 (Tex.App.—Amarillo 1993, no writ), in which Roark, a Texas resident, opposed enforcement of a judgment Sweigart took against him in a Pennsylvania court. After the judgment was entered, Roark had filed a motion in Pennsylvania seeking to vacate it. Among his arguments to the Pennsylvania court was that it did not have personal jurisdiction over him. The Pennsylvania court concluded it had jurisdiction and denied Roark's motion to vacate its judgment. When, the next year, Sweigart sought to enforce the judgment in Texas, Roark asked the Texas court to vacate the Pennsylvania judgment, making essentially the same arguments he had asserted in Pennsylvania. The Texas trial court denied his effort to vacate the Pennsylvania judgment. We affirmed the trial court, noting that a court asked to give effect to a judgment from a sister state's court may inquire into the foreign court's jurisdiction to render the judgment, but "the scope of inquiry into a foreign court's jurisdiction is limited to whether questions of jurisdiction were fully and fairly litigated and finally decided by the court which rendered the original judgment." *Id.* at 389, citing *Durfee*, 375 U.S. at 111. If so, we continued, the issue of personal jurisdiction cannot again be raised in the second court, and the foreign court's judgment is entitled to full

5

faith and credit. 848 S.W.2d at 389 (internal citations omitted). We distinguished the case on which Roark relied, *Bernard Gloeckler Co. v. Baker Co.*, 52 S.W.2d 912 (Tex.Civ.App.—El Paso 1932, no writ), by noting, among other distinctions, that there, "obviously, the question of personal jurisdiction was not fully and fairly litigated and decided by the Pennsylvania court." *Roark*, 848 S.W.2d at 390 (citation omitted).

Our inquiry, then, is whether Quackenbush's contention the Alabama court lacked personal jurisdiction over him was fully and fairly litigated and decided in Alabama. He says it was not, for two reasons. He first argues the Alabama court denied him due process by overruling his motion to dismiss without a hearing. He cites an Alabama rule of civil procedure providing, in part, that defenses such as the absence of personal jurisdiction "shall be heard and determined before trial." Ala. R. Civ. Pro. 12(d).[3] The clerk's record in this appeal contains the documents filed in the Alabama proceeding. Quackenbush's motion to dismiss, filed before his answer, stated it was filed for the limited purpose of contesting jurisdiction and challenging the State's failure to join all necessary parties. It asserted Quackenbush was a Texas resident, without property in, or contacts with, Alabama, and that the paternity action was improper because it did not name the child's presumed father, the husband of its mother. The motion was filed on March 1, 2002. On March 12, the State of Alabama filed an answer

---

[3] The complete rule reads: Preliminary Hearings. The defenses specifically enumerated (1)-(7) in subdivision (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial. Ala. R. Civ. Pro. 12(d). Alabama's rules are based on the Federal Rules of Civil Procedure. *Ex parte Duck Boo Int'l Co.*, 985 So.2d 900, 906 (Ala. 2007).

to the motion to dismiss.  The answer acknowledged the husband, as presumed father, was a necessary party, and stated the intention to amend its pleadings to include him.[4] As to Quackenbush, the State responded that he was alleged to be the father of T.B., that the child was conceived in Alabama, and that Quackenbush's sexual intercourse in the state was sufficient to confer jurisdiction over him for the paternity determination. The Alabama judge denied the motion to dismiss on March 27.  On April 4, Quackenbush filed his answer to the amended complaint, denying its essential allegations "without waiver of his previously stated grounds for dismissal."  In the answer, Quackenbush asserted, as his first affirmative defense, that the court lacked personal jurisdiction over him.

When the case was heard, by the juvenile court referee, on April 16, 2003, Quackenbush was represented by his retained counsel.  The report, findings and recommendations of the referee stated that the court had personal jurisdiction over Quackenbush "in that he waived the issue of jurisdiction when he filed a general denial to the petition on July 11, 2002."  The report also found that the presumed father was excluded by paternity testing as the father of the child, and that Quackenbush was the father.  On April 30, 2003, the juvenile court judge signed a final order adopting the referee's findings.  The final order contains notification that a party may request rehearing.  Quackenbush did so on May 8, and the court set a hearing for June 30, 2003.

---

[4] At the same time, the State filed its amended complaint for paternity and support, naming the presumed father as a defendant. The complaint alleged that "one of the defendants," i.e., Quackenbush or the presumed father, "is the natural father of [T.B.] and owes a duty to support him."

7

The rehearing was continued. After Quackenbush filed bankruptcy proceedings naming his counsel as a creditor, his lawyer sought, and was granted, permission to withdraw from the representation in May 2004. The rehearing was reset for September 29, 2004. The record contains a letter from Quackenbush dated September 22, 2004, to the trial judge, acknowledging the case was set for hearing on September 29, but stating he lacked the means to travel to Alabama, and requesting a continuance. The court denied the requested continuance on September 28, noting that the matter was before the court on Quackenbush's motion for rehearing filed in May 2003, and that it had been twice before continued. The court also noted Quackenbush had failed to submit to DNA testing ordered by the court, and had failed to cooperate "with all discovery requests."

When it denied Quackenbush's motion to dismiss, the trial court had before it his motion and the State's response asserting the jurisdictional ground of Quackenbush's alleged fathering of T.B. in Alabama. His motion did not address that allegation. Alabama authority holds that the trial court's denial of a motion to dismiss for want of personal jurisdiction is "interlocutory and preliminary only," and that when the defendant appropriately persists in challenging the court's jurisdiction in an answer and by summary judgment or at trial after denial of the motion to dismiss, the continuation of personal jurisdiction over the defendant depends on the introduction of substantial evidence to prove the plaintiff's jurisdictional allegations. *Ex parte Duck Boo Int'l Co.*, 985 So.2d at 906. Quackenbush's Alabama counsel followed this procedure, persisting in the answer he filed for Quackenbush to challenge the court's personal jurisdiction. Given the preliminary and interlocutory nature of the trial court's denial of the motion to

8

dismiss, and given the failure of the motion to address what was clearly the State's primary basis for personal jurisdiction, Quackenbush's contention his due process rights were violated by the court's failure to hold a preliminary hearing on his motion is not persuasive.

Second, Quackenbush argues the issue of personal jurisdiction was not fully and fairly litigated in Alabama because the Alabama court gave a factually wrong reason for finding jurisdiction. The referee's April 25, 2003 report contains this finding: "This Court has personal jurisdiction over the Defendant Matthew Qua[c]kenbush in that he waived the issue of jurisdiction when he filed a general denial to the petition on July 11, 2002." The parties before us agree no general denial was filed on that date, and the Attorney General does not contend the responsive pleading Quackenbush actually filed, the answer filed on April 4, 2002, constituted a general appearance subjecting him to the court's jurisdiction under Alabama law. In effect, Quackenbush argues the apparently erroneous finding shows the Alabama court reached the wrong result on the issue of personal jurisdiction.[5]

But if the Alabama court reached the wrong result, Quackenbush's remedy was to pursue rehearing or appeal of its order. And the record shows he pursued rehearing, leading to the September 2004 hearing, at which Quackenbush did not appear. The court's final order signed after that hearing contains notification to Quackenbush of his right to appeal. He did not appeal. The undisputed record thus shows Quackenbush

---

[5] The referee's report, later adopted by the Alabama trial court, contains no finding on the issue whether Quackenbush engaged in sexual intercourse with the mother in Alabama.

9

joined issue in Alabama over that state's personal jurisdiction over him, sought rehearing of an unfavorable ruling, then failed to pursue the further remedies provided under Alabama law. In similar circumstances courts in Texas and elsewhere have found themselves required to give full faith and credit to the resulting foreign state judgments. *See Schultz v. Doyle,* 776 So.2d 1158, 1164 (La. 2001) (Texas court's determination of personal jurisdiction over Louisiana residents entitled to full faith and credit in Louisiana); *Playnation Play Systems, Inc. v. Guajardo,* No. 13-06-302-CV, 2007 Tex.App. LEXIS 3869 (Tex.App.—Corpus Christi May 17, 2007, no pet.) (mem. op.) (defendant had opportunity to litigate claim in Georgia court, failure to appeal adverse judgment notwithstanding); *Maxfield v. Terry,* 885 S.W.2d 216 (Tex.App.-- Dallas 1994, no pet.) (Texas court required to give full faith and credit to Florida probate proceeding after contestant non-suited contest, voluntarily giving up opportunity Florida law provided to contest domicile issue) (*citing Sherrer,* 334 U.S. at 352). *See generally Underwriters National Assurance Co. v. N.C. Life & Accident & Health Ins. Guaranty Assn. et. al.,* 455 U.S. 691, 710, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1981).

We find the trial court abused its discretion by failing to apply the requirements of full faith and credit to the Alabama court's determination of personal jurisdiction over Quackenbush. Accordingly, we sustain the Attorney General's appellate issue, reverse the trial court's order vacating and dismissing the Attorney General's notice of registration, and remand the cause.

We have carried with the appeal the motion filed by the Attorney General requesting we take judicial notice of certain provisions of Alabama law and procedural rules, and information about its court structure. Quackenbush opposed the motion. We

take judicial notice of Rule 12 of the Alabama Rules of Civil Procedure and Alabama's version of UIFSA, Ala. Code § 30-3A-101 et seq. (West 1975), but deny the Attorney General's motion in all other respects.

James T. Campbell
Justice